Carter C. White, CBN #164149
ccwhite@ucdavis.edu
U.C. Davis Civil Rights Clinic
One Shields Avenue, Bldg. TB-30
Davis, CA 95616-8821
Telephone: 530.752.5440
Facsimile: 530.752.5788

*Listing continued on next page*
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEIANA ALDRICH,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>GERARDO ROMO, SAMUEL NAVARRO, IVAN ORDAZ, MOLLY HILL, AMY MILLER, SHANNON STARK, and RALPH DIAZ<br>　　　　　　Defendants. | Case No:<br><br>**COMPLAINT**<br><br>Jury Trial Demanded |

*Attorneys for Plaintiff, continued*

Maggy Krell, CBN #226675
MaggyKrell@gmail.com
555 Capitol Mall, Suite 510
Sacramento CA 95814
Telephone: 916.529.0468

Jenny C. Huang, CBN #223596
jhuang@justicefirst.net
Jessica T. Arena, CBN #301807
jarena@justicefirst.net
JUSTICE FIRST
180 Grand Avenue, Suite 1300
Oakland, CA  94612
Telephone: 510.628.0695
Facsimile: 510.318.770

Plaintiff KEIANA ALDRICH complains and alleges as follows:

## INTRODUCTION

1. This case arises out of the sexual assault, battery, abuse and harassment Plaintiff KEIANA ALDRICH ("ALDRICH") was repeatedly subjected to by Defendants GERARDO ROMO ("ROMO"), SAMUEL NAVARRO ("NAVARRO"), and IVAN ORDAZ ("ORDAZ"), three California Department of Correction and Rehabilitation ("CDCR") employees, while serving as a state prisoner at the California Institution for Women ("CIW").

2. Defendants MOLLY HILL, AMY MILLER, SHANNON STARK, and RALPH DIAZ maintained a custom, policy, and practice of ignoring, condoning, and/or encouraging the sexual abuse of inmates by corrections staff at CIW and were deliberately indifferent to the substantial risk of sexual abuse of female prisoners, including Plaintiff ALDRICH. Upon information and belief, Defendants HILL, MILLER, STARK, and DIAZ knew or should have known of the sexually predatory behavior of Defendants ROMO, NAVARRO, and ORDAZ, yet failed to promptly report, investigate, correct their behavior, and/or prevent their sexual abuse of Plaintiff ALDRICH.

3. Instead, Defendants HILL, MILLER, STARK, and DIAZ protected, ratified, and/or encouraged the sexual misconduct by Defendants ROMO, NAVARRO, and ORDAZ. Defendants HILL, MILLER, STARK, and DIAZ also failed to protect Plaintiff ALDRICH from retaliation by Defendants ROMO, NAVARRO, and ORDAZ, other corrections officers, and other inmates for reporting the sexual misconduct by CIW staff.

4. As a result of Defendants' deliberate indifference to the sexual abuse and harassment Plaintiff ALDRICH faced, Plaintiff ALDRICH continues to suffer from loss of wages, severe depression, anxiety, pain and suffering,

disciplinary violations and punishment, loss of human dignity, and loss of security.

## **PARTIES**

5. Plaintiff KEIANA ALDRICH ("ALDRICH") is a sex trafficking survivor, who was prosecuted as an adult, at age 17, for crimes arising from her sexual exploitation. She remains incarcerated, as a young, female inmate at CIW. At all relevant times, Plaintiff ALDRICH remained under the care and custody of correctional officers and/or employees at CIW.

6. Defendant GERARDO ROMO ("ROMO") was at all relevant times a CIW employee. He was responsible for the provision of safe custody and care of inmates. At all relevant times, he was acting under color of state law, in the course and scope of his employment, and is being sued in his individual capacity.

7. Defendant SAMUEL NAVARRO ("NAVARRO") was at all relevant times a CIW employee. He was responsible for the provision of safe custody and care of inmates. At all relevant times, he was acting under color of state law, in the course and scope of his employment, and is being sued in his individual capacity.

8. Defendant IVAN ORDAZ ("ORDAZ") was at all relevant times a CIW employee. He was responsible for the provision of safe custody and care of inmates. At all relevant times, he was acting under color of state law, in the course and scope of his employment, and is being sued in his individual capacity.

9. Defendant MOLLY HILL ("HILL") was at all relevant times the Warden of CIW. She was responsible for the supervision and administration of the correctional facility, including but not limited to the provision of safe

custody and care of inmates. She knew or should have known about the sexual misconduct and retaliation by Defendant ROMO, Defendant NAVARRO, and Defendant ORDAZ and failed to prevent further harm to Plaintiff ALDRICH. At all relevant times, she was acting under color of state law, in the course and scope of her employment, and is being sued in her individual capacity.

10. Defendant AMY MILLER ("MILLER") is and was at all relevant times the Associate Director, Division of Adult Institutions - Female Offender Programs and Services ("FOPS") of the CDCR. The mission of FOPS is to provide safe and secure housing for female prisoners, and to manage and provide oversight to all female programs. Defendant MILLER is and was responsible for managing and providing safe and secure housing for female offenders. At all relevant times, she was acting under color of state law, in the course and scope of her employment, and is being sued in her individual capacity.

11. Defendant SHANNON STARK ("STARK") is and was at all relevant times the PREA Coordinator of CDCR. She is and was responsible for maintaining a program to address the education, prevention, detection, response, investigation, and tracking of sexual misconduct in CDCR. At all relevant times, she was acting under color of state law, in the course and scope of her employment, and is being sued in her individual capacity.

12. Defendant RALPH DIAZ ("DIAZ") is the Secretary of the CDCR. He is responsible for the supervision, management, and control of all CDCR prisons and for the care, custody, and treatment of all CDCR inmates, including Plaintiff ALDRICH. He knew or should have known about the problems of sexual abuse of inmates at CIW and failed to prevent further

harm to Plaintiff ALDRICH. At all relevant times, he was acting under color of state law, in the course and scope of his employment, and is being sued in his individual capacity.

## JURISDICTION AND VENUE

13. This Court has jurisdiction under 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights). This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

14. Pursuant to 28 U.S.C. § 1391, venue is appropriate in this district because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## FACTUAL ALLEGATIONS

15. In June 2018, Plaintiff ALDRICH was assigned to work in janitorial services at Health Facility Management ("HFM") of the California Institution for Women ("CIW"). Specifically, Plaintiff ALDRICH worked in the Treatment and Triage Hospital ("TTA") from June 2018 to January 2019.

16. Plaintiff ALDRICH received 35 cents per hour in pay and worked seven to eight hours per day for five days a week at the TTA. Occasionally, Plaintiff ALDRICH worked overtime and received 35 cents per hour in pay for that work. Plaintiff ALDRICH'S expenses included hygiene products, food and makeup.

17. Within two to three weeks of Plaintiff ALDRICH beginning this work assignment, Defendant ORDAZ, the head supervisor of HFM who primarily worked in the office, began sexually abusing and harassing Plaintiff ALDRICH.

18. On three or four different occasions, Defendant ORDAZ took Plaintiff ALDRICH to a different location from her work area and forcibly kissed her. At no time did Plaintiff ALDRICH give valid, lawful consent to any of the sexual contact she had with Defendant ORDAZ. The legal concept of consent does not exist between staff and inmates, and any sexual behavior between them constitutes sexual misconduct. 15 C.C.R. §3401.5(a).

19. In July of 2018, Defendant ORDAZ completed a "Work Supervisor's Report" form where he recommended that Plaintiff ALDRICH'S pay be increased from 35 cents per hour to 40 cents per hour. Defendant ORDAZ wrote that Plaintiff ALDRICH "follows instructions with good attitude."

20. Other female co-workers of Plaintiff ALDRICH witnessed Defendant ORDAZ engaging in this sexual misconduct with Plaintiff ALDRICH and suffered similar sexual abuse and harassment at the hands of Defendant ORDAZ on different occasions. Plaintiff ALDRICH initially did not report these incidents involving Defendant ORDAZ out of fear of retaliation and placement in administrative segregation.

21. Plaintiff ALDRICH told Ms. Adriana Gomez, a "free staff" at HFM who immediately supervised and worked on the floor with several inmate janitorial workers including Plaintiff ALDRICH, about Defendant ORDAZ'S misconduct but Plaintiff ALDRICH wanted assurance that she would not be subject to retaliation or placement in administrative segregation before she formally reported Defendant ORDAZ'S misconduct.

22. Once she received this assurance that she would not be placed in administrative segregation for reporting Defendant ORDAZ'S conduct, Plaintiff ALDRICH agreed to give a tape-recorded statement to Lieutenant Esquivez and Sergeant Mendoza from ISU. Lieutenant Esquivez and

Sergeant Mendoza assured Plaintiff Aldrich that "everything will be OK or whatever."

23. After Plaintiff ALDRICH made this report, Defendant ORDAZ was transferred out of HFM.

24. Shortly after Defendant ORDAZ was removed from his position, Defendant NAVARRO began sexually abusing and harassing Plaintiff ALDRICH.

25. Defendant NAVARRO was a line supervisor who worked on the floor with Plaintiff ALDRICH and the other prisoner workers. During his tenure as a line supervisor, Defendant NAVARRO earned a reputation of being a pervert.

26. On more than five occasions, Defendant NAVARRO forcibly groped, kissed, and grabbed Plaintiff ALDRICH and told her that "he could do whatever he wants to her." In addition, Defendant NAVARRO physically touched Plaintiff ALDRICH inside her vagina. At no time did Plaintiff ALDRICH give valid, lawful consent to any of the sexual contact she had with Defendant NAVARRO.

27. Defendant NAVARRO coerced Plaintiff ALDRICH into performing sexual acts by bringing her items from home and from the store, including food, chap stick, candy, and two shirts. Defendant NAVARRO told Plaintiff ALDRICH that he loved her and wanted to marry her.

28. In addition, Defendant NAVARRO wrote Plaintiff ALDRICH one or two love letters, in which he explicitly told Plaintiff ALDRICH not to tell the Investigative Services Unit about his sexual misconduct. Plaintiff ALDRICH turned in the chap stick and love letters to ISU. Plaintiff ALDRICH no longer possesses the two t-shirts she received from Defendant NAVARRO because she decided to give them away. Throughout the interactions

between Defendant NAVARRO and Plaintiff ALDRICH, Defendant NAVARRO coerced and bribed Plaintiff ALDRICH into maintaining her silence by promising to bring her jewelry. Defendant ROMO never fulfilled this promise.

29. Shortly thereafter, on or around August 8, 2018, Defendant ROMO, the new head supervisor at HFM, took Plaintiff ALDRICH on a golf cart to deliver ice to the TTA. After delivering the ice, Defendant ROMO groped Plaintiff ALDRICH'S breast with his arm and forced her to touch his genitals over his clothes. Subsequently, Defendant ROMO specifically asked Plaintiff ALDRICH if he could trust her not to tell anybody about this sexual misconduct.

30. A few days later, on or around August 10, 2018, Plaintiff ALDRICH went to the HFM office to turn in a timecard for the overtime she worked. When Plaintiff ALDRICH went into the office, Defendant ROMO was present. Defendant ROMO made Plaintiff ALDRICH follow him into a closet where Defendant ROMO pulled down his pants, told Plaintiff ALDRICH to "taste this" and coerced Plaintiff ALDRICH into orally copulating him. At no time did Plaintiff ALDRICH give valid, lawful consent to any of the sexual contact she had with Defendant ROMO.

31. After Defendant ROMO forced Plaintiff ALDRICH to perform oral sex on him, Plaintiff ALDRICH went to the restroom because she felt something itching and stuck at the back of her throat. Plaintiff ALDRICH realized that she had a piece of Defendant ROMO'S pubic hair in her mouth from him forcing her to orally copulate him. Plaintiff ALDRICH placed the piece of pubic hair on a napkin and gave it to the ISU that same day.

32. After this incident, Defendant ROMO began to behave strangely with Plaintiff ALDRICH. Plaintiff ALDRICH engaged in a conversation with Defendant ROMO where she told him "you were not supposed to do what you did to me in the closet because you are my boss." In response, Defendant ROMO told Plaintiff ALDRICH "but it wasn't rape." Subsequently, Plaintiff ALDRICH told Defendant ROMO that it was rape.

33. Ultimately, in December 2018, Plaintiff ALDRICH reported the sexual misconduct of both Defendant NAVARRO and Defendant ROMO to Mr. Hernandez, her new direct supervisor at HFM, when she went to the office to deliver a medical "lay-in" slip for missing work due to a wisdom teeth removal procedure. Plaintiff ALDRICH also gave a tape-recorded statement about Defendant ROMO to Lieutenant Esquivez and Sergeant Mendoza from ISU.

34. Upon information and belief, per ISU'S and Warden HILL'S request, Plaintiff ALDRICH'S supervisor terminated her job on December 20, 2018.

35. After Plaintiff ALDRICH reported the sexual misconduct, Defendant NAVARRO was removed from his job at HFM and Defendant ROMO was transferred to the California Institution for Men.

36. However, CIW allowed Defendant ORDAZ to return to his position at HFM in January 2019 after Plaintiff ALDRICH was fired from her job at HFM. On information and belief, Defendant ORDAZ ended up voluntarily leaving HFM within two to three weeks of his return in January 2019.

37. Upon information and belief, Defendant NAVARRO and Defendant ROMO were subsequently investigated for their sexual misconduct by investigators from OIA in Rancho Cucamonga.

38. In addition, in December 2018, Plaintiff ALDRICH gave her first recorded statement to OIA investigators detailing the sexual abuse and harassment she faced by Defendant NAVARRO and Defendant ROMO. On the same day in December 2018, Plaintiff ALDRICH engaged in a separate non-recorded conversation with Sergeant Mejia-Wise, a female ISU Sergeant at CIW responsible for PREA matters.  Sergeant Mejia-Wise erroneously informed Plaintiff ALDRICH that she could not file a CDCR 602 inmate appeal (grievance) or take any other action until OIA completed their investigation. Sergeant Mejia-Wise also made no mention of filing a government claim to Plaintiff ALDRICH.

39. During this conversation, Plaintiff ALDRICH also informed Sergeant Mejia-Wise about wanting to get a lawyer to stop the sexual abuse given the lack of assistance she was receiving inside the prison. When Plaintiff ALDRICH expressed her desire to obtain a lawyer, Sergeant Mejia-Wise explicitly discouraged Plaintiff ALDRICH from doing so. Sergeant Mejia-Wise told Plaintiff ALDRICH that "everything would be fine" and "if you're not guilty why would you need a lawyer?"

40. Sergeant Mejia-Wise also told Plaintiff ALDRICH that she would send her a rape crisis packet ("RACC"). Although Plaintiff ALDRICH received the RACC packet in the mail, it did not contain any information about filing a government claim, a 602 grievance or suit against the prison. The packet only contained addresses and information about rape crisis and youth advocate programs.

41. Shortly after this conversation, in or around January 2019, Plaintiff ALDRICH followed up with Sergeant Mejia-Wise about the status of her case and the length of time it would take to obtain the results of the

investigation. All Sergeant Mejia-Wise told Plaintiff ALDRICH was that "the Internal Affairs guys will let you know."

42. In or around January 2019, Plaintiff ALDRICH found out that her job was terminated after she got to work and a female counselor named Rayhill told her that the Warden left a note in Plaintiff's "C-file" saying she could not work there anymore.

43. After losing her job, experiencing anxiety and depression as a result of the sexual abuse, and receiving no feedback on the status of her complaints to OIA, Plaintiff ALDRICH decided to attempt to find a lawyer, and did so as quickly as possible.

## COMPLIANCE WITH GOVERNMENT CLAIM REQUIREMENT

44. On March 12, 2019, Plaintiff ALDRICH'S attorney submitted Plaintiff's claim regarding sexual abuse by CDCR employees and application for a late claim with the Government Claims Program ("GCP") of the California Department of General Services. GCP assigned Claim Number 19002749 to the claim. On May 17, 2019, GCP informed Plaintiff's attorney that it had received the claim and had also received and would review Plaintiff's application for leave to present a late claim.

45. On June 25, 2019, Plaintiff's attorneys submitted a supplement to the claim and late claim application to the GCP.

46. On November 6, 2019, the GCP informed Plaintiff's counsel that it had completed its review. GCP granted the Plaintiff's application for leave to present a late claim but denied the underlying claim. Plaintiff brings this action within 6 months of that denial in compliance with Cal. Gov't Code §945.6.

//

## **STATEMENT OF DAMAGES**

47. As a result of Defendants' unlawful conduct, Plaintiff ALDRICH suffered and continues to suffer from loss of wages, severe depression, anxiety, pain and suffering, disciplinary violations and punishment, loss of human dignity, and loss of security.

48. Disclosing the details of the sexual abuse and harassment she experienced at the hands of Defendant ROMO, Defendant NAVARRO, and Defendant ORDAZ, to prison officials and being placed in administrative segregation has led Plaintiff ALDRICH to overdose, physically harm herself, swallow foreign objects, and attempt to hang herself, resulting in her being hospitalized multiple times.

49. In Fall of 2019 Plaintiff ALDRICH was placed in a psychiatric in patient ("PIP") ward at CIW. The CIW prison psychologist deemed Plaintiff ALDRICH'S depression so severe that she prescribed Plaintiff ALDRICH heavy medications such as Prozac, Haldol, Thorzine, Triletol, and Proponal to treat it.

50. In addition, Plaintiff ALDRICH has suffered retaliation at the hands of Defendants. In or around January 2019, Plaintiff ALDRICH was dismissed from her janitorial work assignment at HFM in retaliation for reporting Defendant NAVARRO and Defendant ROMO'S sexual misconduct. Plaintiff ALDRICH'S pay was about to be raised from 40 cents to 45 cents per hour because her pay increased every three months. Plaintiff ALDRICH did not receive a new job assignment until a few months later when she was assigned to a yard crew job where she earned 8 cents per hour, a wage significantly less than the one she received while working in janitorial

services at HFM. Plaintiff ALDRICH was later shifted to a job as a porter where she also earned only 8 cents per hour.

51. Defendants maintained a custom, practice, and/or official policy at the CIW of ignoring, condoning, and/or encouraging the sexual abuse of inmates by correctional employees including Defendant ROMO, Defendant NAVARRO, and Defendant ORDAZ.

52. Defendants' conduct was intentional, willful, malicious, reckless and in conscious disregard of Plaintiff ALDRICH'S protected rights.

53. Defendants were deliberately indifferent to the substantial risk of sexual abuse of Plaintiff ALDRICH and to the retaliatory conduct directed at Plaintiff ALDRICH for reporting the sexual misconduct by Defendant ROMO, Defendant NAVARRO, and Defendant ORDAZ and/or for responding to sexual and other demands.

54. Defendants acted individually and/or conspired to protect, condone, ratify, and/or encourage Defendant ROMO, Defendant NAVARRO, and Defendant ORDAZS' sexual misconduct and to retaliate or threaten to retaliate against Plaintiff ALDRICH if she reported Defendant ROMO, Defendant NAVARRO, and Defendant ORDAZ for their illegal conduct.

55. To date, Defendants have failed to protect Plaintiff ALDRICH, a young women who has been subjected to severe sexual abuse, from ongoing retaliation, sexual abuse, and harassment by Defendants and other correctional employees. Defendants have also failed to provide adequate mental health counseling and victim support.

56. As such, to deter future similar conduct by Defendants, Plaintiff ALDRICH is entitled to an award of punitive damages and an injunction against Defendants.

14

# FIRST CAUSE OF ACTION

## 42 U.S.C. § 1983 - Excessive Force, Sexual Assault

## Deprivation of Civil Rights Under Color of State Law – Individual Liability

## (Against Defendants ROMO, NAVARRO and ORDAZ)

57. The foregoing allegations are incorporated as if re-alleged herein.

58. Defendants ROMO, NAVARRO, and ORDAZ acted under color of law and in the scope of their employment deprived Plaintiff ALDRICH of her constitutional rights under the Eighth Amendment, which include, but are not limited to, the right to be free from cruel and unusual punishment and the right not to be subject to sexual assault and the unreasonable or unjustified force against one's person. The rights set forth are embodied in clearly established state and federal constitutional law

59. During all times mentioned herein, Defendants ROMO, NAVARRO and ORDAZ'S conduct toward Plaintiff ADLRICH was cruel, unusual, unreasonable, unjustified, unlawful, malicious, sadistic, offensive to human dignity, sexually abusive, sexually harassing, without penological justification and for each Defendant's own gratification,

60. The aforementioned acts and/or omissions of Defendants ROMO, NAVARRO and ORDAZ were willful, intentional, wanton, reckless, and/or accomplished with a conscious disregard of Plaintiff ALDRICH'S rights.

61. As a direct and proximate result of the Defendants ROMO, NAVARRO and ORDAZ'S unlawful conduct, Plaintiff ALDRICH suffered and continues to suffer injuries and damages as alleged herein.

//

## SECOND CAUSE OF ACTION

### 42 U.S.C. § 1983 - Supervisory Liability

### (Against Defendants HILL, MILLER, STARK, and DIAZ)

62. The foregoing allegations are incorporated as if re-alleged herein.

63. On information and belief, Defendants HILL, MILLER, STARK, and DIAZ were employed by CDCR in supervisory roles.

64. On information and belief, Defendants HILL, MILLER, STARK, and DIAZ were responsible for the supervision of subordinate staff at CIW including, but not limited to, Defendants ROMO, NAVARRO, and ORDAZ.

65. During all times mentioned herein, Defendants HILL, MILLER, STARK, and DIAZ acted under color and pretense of state law, and under color of the statutes, ordinances, regulations, policies, practices, customs, and usages of the CDCR.

66. During all times mentioned herein, the acts and/or failures to act of Defendants, HILL, MILLER, STARK, and DIAZ'S subordinates, deprived Plaintiff ALDRICH of her rights, privileges, and immunities secured to her by the Eighth Amendment to the United States Constitution and the laws of the United States.

67. In willfully committing the acts of sexual misconduct as described in the foregoing paragraphs of this Complaint, Defendants ROMO, NAVARRO, and ORDAZ, deprived Plaintiff ALDRICH of the rights, privileges, and immunities secured to her by the Eighth Amendment to the United States Constitution and the laws of the United States.

68. Defendants HILL, MILLER, STARK, and DIAZ are responsible under a theory of supervisory liability for the act and omissions of Defendants ROMO, NAVARRO, and ORDAZ as alleged herein based on the following:

16

69. Defendants HILL, MILLER, STARK, and DIAZ, acting under color of law, have implemented, maintained, encouraged, perpetuated, and/or ratified the custom, practice, or policy of sexual misconduct of inmates by staff at the California Institution for Women.

70. Defendants HILL, MILLER, STARK, and DIAZ acting under color of law, as a matter of custom, practice, or policy, failed to maintain adequate and proper training  for subordinate staff necessary to educate them as the to the constitutional rights of prisoners; specifically, to prevent the consistent and systematic use of harassment and assault; and to prevent and report staff/prisoner rape; failed to adequately supervise or control their staff, and/or

71. Defendants HILL, MILLER, STARK, and DIAZ knowingly refused to terminate a series of acts by CIW staff that engage in sexual misconduct with inmates, including Defendants ROMO, NAVARRO, and ORDAZ. Defendants HILL, MILLER, STARK, and DIAZ knew or reasonably should have known that their failure to act would cause Defendants ROMO, NAVARRO, and ORDAZ to deprive Plaintiff ALDRICH of her constitutional rights as set forth herein.

72. Defendants HILL, MILLER, STARK, and DIAZ showed a reckless or callous indifference to the depravation of the rights of Plaintiff ALDRICH.

73. The individual Defendants named herein, separately and in concert, acted willfully, knowingly, with reckless disregard and deliberate indifference to the known consequences of their acts and omissions, and purposefully with the intent to deprive Plaintiff ALDRICH of her federally protected rights and privileges, and did in fact violate those rights and privileges, entitling Plaintiff ALDRICH to punitive and exemplary damages in an amount to be proven at the trial of this matter.

74. As a direct and proximate result of the aforementioned constitutional violations, Plaintiff ALDRICH suffered and continues to suffer injuries and damages as alleged herein.

### THIRD CAUSE OF ACTION
### 42 U.S.C. § 1983 - Retaliation
### (Against All Defendants)

75. The foregoing allegations are incorporated as if re-alleged herein.

76. Plaintiff ALDRICH has a First Amendment right to be free from retaliation for participating in protected speech activities.

77. Defendants retaliated against Plaintiff ALDRICH by terminating her job for exercising her constitutional right and filing PREA grievances against Defendants ROMO, NAVARRO, and ORDAZ.

78. Defendants' retaliatory action did not advance legitimate goals of the correctional institution.

79. Defendants' retaliation caused Plaintiff ALDRICH to suffer harm and economic damages for loss of past and future earnings, loss of earning capacity, loss of such employment related opportunities as the opportunity for advancement and promotion, in amounts according to proof at trial.

80. As a direct and proximate result of the unlawful conduct by Defendants ROMO, NAVARRO, and ORDAZ, Plaintiff ALDRICH suffered and continues to suffer injuries and damages as alleged herein.

### FOURTH CAUSE OF ACTION
### Civil Code § 52.4 - Gender Violence
### (Against Defendants ROMO, NAVARRO and ORDAZ)

81. The foregoing allegations are incorporated as if re-alleged herein.

82. Defendants ROMO, NAVARRO,  and ORDAZ committed physical intrusion or physical invasion of a sexual nature upon Plaintiff ALDRICH under coercive conditions;

83. Defendants ROMO, NAVARRO,  and ORDAZ committed acts against Plaintiff ALDRICH constituting a criminal offense under state law that has as an element the use, attempted use, or threatened use of physical force against her, and committed those acts at least in part based on her gender;

84. As a result of unlawful conduct by Defendants ROMO, NAVARRO, and ORDAZ as alleged herein, Plaintiff ALDRICH has suffered, and will continue to suffer, the above-stated damages in an amount according to proof.  For these damages Plaintiff seeks actual damages, compensatory damages, punitive damages, injunctive relief, attorneys' fees and costs, and any other appropriate relief.

### FIFTH CAUSE OF ACTION
**California Civil Code Section 52.1 – Bane Civil Rights Act**
**(Against all Defendants)**

85. The foregoing allegations are incorporated as if re-alleged herein.

86. Defendants HILL, MILLER, STARK, and DIAZ, ROMO, NAVARRO, and ORDAZ interfered with the exercise and enjoyment of Plaintiff ALDRICH'S clearly established rights under United States and California law, which include, but are not limited to, the following:

    a.  Eight Amendment to the United States Constitution and Article I, Section 17 of the California Constitution – right to be free from cruel and unusual punishment;

     b.  California Civil Code Section 43 - right of protection from bodily restraint or harm, from personal insult, and from defamation;

     c.  California Civil Code Section 51.7 - right to freedom from violence; and

     d.  California Civil Code Section 52.1 - right to exercise civil rights.

87. Defendants violated Plaintiff ALDRICH'S clearly established rights under United States and California law by threats, intimidation and coercion.

88. Plaintiff ALDRICH reasonably believed that if she tried to refuse or repel the sexual assault, Defendants ROMO, NAVARRO, and ORDAZ would retaliate against her.

89. As a direct and proximate result of the unlawful conduct by Defendants HILL, MILLER, STARK, and DIAZ, ROMO, NAVARRO, and ORDAZ, Plaintiff ALDRICH suffered and continues to suffer injuries and damages as alleged herein.

90. Defendants HILL, MILLER, STARK, and DIAZ, ROMO, NAVARRO, and ORDAZ are liable for injuries to Plaintiff ALDRICH'S proximately caused by acts of its employees as each was acting under the color of law and within the scope of their employment or agency with CDCR.

## SIXTH CAUSE OF ACTION
### California Civil Code Section 51.7– Ralph Act
### (Against all Defendants)

91. The foregoing allegations are incorporated as if re-alleged herein.

92. Defendants HILL, MILLER, STARK, and DIAZ, ROMO, NAVARRO, and ORDAZ violated Plaintiff ALDRICH'S right to be free from violence, threat

of violence, or intimidation by threat of violence on the basis of Plaintiff's sex.

93. As a direct and proximate result of the unlawful conduct by Defendants HILL, MILLER, STARK, and DIAZ, ROMO, NAVARRO, and ORDAZ, Plaintiff ALDRICH suffered and continues to suffer injuries and damages as alleged herein.

94. Defendants HILL, MILLER, STARK, and DIAZ, ROMO, NAVARRO, and ORDAZ are liable for injuries to Plaintiff ALDRICH'S proximately caused by acts of its employees as each was acting under the color of law and within the scope of their employment or agency with CDCR.

### SEVENTH CAUSE OF ACTION

### California Government Code § 815.2

### Negligent Supervision and *Respondeat Superior* Liability

### (Against Defendants HILL, MILLER, STARK, and DIAZ)

95. The foregoing allegations are incorporated as if re-alleged herein.

96. Defendants HILL, MILLER, STARK, and DIAZ are liable for injuries to Plaintiff ALDRICH proximately caused by the acts and omission of their employees within the scope of their employment.

97. Defendants HILL, MILLER, STARK, and DIAZ owed Plaintiff ALDRICH a duty of care to supervise CDCR employees in such a manner to comply with the law and ensure that the acts alleged herein did not occur.

98. Defendants HILL, MILLER, STARK, and DIAZ breached the owed duty of care by failing to supervise, investigate, and discipline Defendants ROMO, NAVARRO, and ORDAZ to ensure compliance with the law and prevent sexual abuse and harassment by correctional employees.

99. On information and belief, Defendants ROMO, NAVARRO, and ORDAZ are and were at all times material to this complaint were supervised and employed by Defendants HILL, MILLER, STARK, and DIAZ and the wrongful conduct attributed to Defendants ROMO, NAVARRO, and ORDAZ were caused by their acts in the scope of their employment with Defendants HILL, MILLER, STARK, and DIAZ.

100. As a direct and proximate result of the unlawful conduct by Defendants ROMO, NAVARRO, and ORDAZ, Plaintiff suffered and continues to suffer injuries and damages as alleged herein.

101. Defendants HILL, MILLER, STARK, and DIAZ are liable for injuries to Plaintiff proximately caused by acts of its employees as each was acting under the color of law and within the scope of their employment or agency with CDCR.

## EIGHTH CAUSE OF ACTION

### Assault and Battery

### (Against Defendants ROMO, NAVARRO, and ORDAZ)

102. The foregoing allegations are incorporated as if re-alleged herein.

103. Defendants ROMO, NAVARRO, and ORDAZ assaulted and battered Plaintiff ALDRICH. Defendants ROMO, NAVARRO, and ORDAZ'S conduct was intentional, nonconsensual, harmful, offensive and without lawful justification. Further, Defendants ROMO, NAVARRO, and ORDAZ'S conduct caused Plaintiff ALDRICH to be placed in fear of personal harm.

104. Defendants ROMO, NAVARRO, and ORDAZ are liable for injuries to Plaintiff proximately caused by acts of its employees as each was acting

22

under the color of law and within the scope of their employment or agency with CDCR.

105.   As a direct and proximate result of the unlawful conduct by Defendants ROMO, NAVARRO, and ORDAZ, Plaintiff ALDRICH suffered and continues to suffer injuries and damages as alleged herein.

### NINTH CAUSE OF ACTION

**False Imprisonment**

**(Against Defendant ROMO)**

106.   The foregoing allegations are incorporated as if re-alleged herein.

107.   In the course of the sexual abuse of Plaintiff ALDRICH, Defendant ROMO unlawfully restrained and/or confined Plaintiff ALDRICH with deliberate malice, violence, menace, and/or oppression that resulted in harmful contacts to Plaintiff.

108.   At no time did Plaintiff ALDRICH give valid, lawful consent to any of the intentional, unlawful, harmful and offensive acts by Defendant ROMO.

109.   As a direct and proximate result of the unlawful conduct by Defendant ROMO, Plaintiff ALDRICH suffered and continues to suffer injuries and damages as alleged herein.

### TENTH CAUSE OF ACTION

**Negligence Per Se- Statutory Violation**

**(Against Defendants ROMO, NAVARRO, and ORDAZ)**

110.   The foregoing allegations are incorporated as if re-alleged herein.

111.   In the course of their conduct as detailed above, Defendants ROMO, NAVARRO, and ORDAZ violated numerous California laws, including, among others, the Child California Penal Code § 243.4, and California Civil Code §1708.5.

112.     Defendants ROMO, NAVARRO, and ORDAZ'S violations of these laws were each substantial factors in causing the harm suffered by Plaintiff ALDRICH.

113.     Per California Penal Code § 289.6, Plaintiff ALDRICH has a right to be free of sexual abuse by prison employees.

114.     As a direct and proximate result of the negligent conduct by ROMO, NAVARRO, and ORDAZ, Plaintiff ALDRICH suffered and continues to suffer injuries and damages as alleged herein.

**ELEVENTH CAUSE OF ACTION**

**Intentional Infliction of Emotional Distress**

**(Against All Defendants)**

115.     The foregoing allegations are incorporated as if re-alleged herein.

116.     Defendants  HILL, MILLER, STARK, DIAZ, ROMO, NAVARRO, and ORDAZ'S conduct was willful, extreme, outrageous, and was directed at causing harm, humiliation, mental anguish, and emotional and physical distress to Plaintiff ALDRICH. Defendants HILL, MILLER, STARK, DIAZ, ROMO, NAVARRO, and ORDAZ'S conduct was intended to cause injury or was in reckless disregard of the probability of causing injury to Plaintiff ALDRICH and did in fact cause Plaintiff ALDRICH serious injury.

117.     The failure by Defendants HILL, MILLER, STARK, and DIAZ to protect Plaintiff ALDRICH from Defendants ROMO, NAVARRO, and ORDAZ'S repeated abuse against Plaintiff ALDRICH, and failure to prevent harm to Plaintiff ALDRICH all amount to extreme and outrageous conduct directed at Plaintiff ALDRICH and caused serious injury to Plaintiff ALDRICH.

118.     As a result of Defendants HILL, MILLER, STARK, DIAZ, ROMO, NAVARRO, and ORDAZ'S unlawful conduct as alleged herein, Plaintiff ALDRICH has suffered, and will continue to suffer, the above stated damages in an amount according to proof, including attorney fees and costs, to remedy the unlawful conduct.

## TWELTH CAUSE OF ACTION

### Negligence

### (Against Defendants HILL, MILLER, STARK, and DIAZ)

119.     The foregoing allegations are incorporated as if re-alleged herein.

120.     At all relevant times, Defendants HILL, MILLER, STARK, and DIAZ, owed Plaintiff ALDRICH the legal duty to act with reasonable care, to prevent injury or harm to Plaintiff ALDRICH.

121.     At all relevant times, Defendants HILL, MILLER, STARK, and DIAZ owed Plaintiff ALDRICH the duty of care owed by a jailer to a prisoner.

122.     At all relevant times, Defendants HILL, MILLER, STARK, and DIAZ owed Plaintiff ALDRICH duties established by the Prison Rape Elimination Act and the Sexual Abuse in Detention Elimination Act.

123.     At all relevant times, Defendants HILL, MILLER, STARK, and DIAZ, owed Plaintiff ALDRICH the legal duty to act with reasonable care and to refrain from:

    a.  violating the right to be free from cruel and unusual punishment; and

    b.  violating the provisions of section 43 of the California Civil Code, which provides in pertinent part that every person has the right of protection from bodily restraint or harm, from personal insult, and from defamation.

124.     Further, Defendants HILL, MILLER, STARK, and DIAZ owed Plaintiff the legal duty to adequately train, supervise, set departmental policy and protocols for their employees, to comply with the Prison Rape Elimination Act and the Sexual Abuse in Detention Elimination Act, and to adopt and/or enforce policies and procedures for the proper hiring, training, and supervision of their employees.

125.     By their acts and omissions, Defendants HILL, MILLER, STARK, and DIAZ breached each of the foregoing duties owed to Plaintiff ALDRICH. Further, it was reasonably foreseeable that such breaches of duty would cause Plaintiff ALDRICH physical and/or emotional harm.

126.     As a direct and proximate result of the negligent conduct by HILL, MILLER, STARK, and DIAZ, Plaintiff ALDRICH suffered and continues to suffer injuries and damages as alleged herein.

## JURY TRIAL DEMAND

127.     Plaintiff ALDRICH hereby requests a jury trial in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff ALDRICH prays for the following relief:

1.  For general and compensatory damages in an amount according to proof at trial;

2.  For punitive and exemplary damages against each defendant in an amount appropriate to punish Defendants and deter others from engaging in similar misconduct;

3.  For injunctive relief including, but not limited to (1) compliance with the Prison Rape Elimination Act; (2) termination of Defendants ROMO, NAVARRO, and ORDAZ, from employment with the California Department of Corrections and Rehabilitation ("CDCR"), pursuant to the State Civil Service Act, and a prohibition against any rehiring or

26

reinstatement of these defendants; (3) protection from further retaliation against Plaintiffs by Defendants and other correctional personnel.

4. For costs of suit and reasonable attorney's fees pursuant to 42 U.S.C. § 1988 and as otherwise authorized by statute or law;

5. For such other relief as the Court may deem just, proper and appropriate.


Dated: May 5, 2020                    Respectfully submitted,



**/s/ Carter C. White**
UC Davis School of Law
Civil Rights Clinic

**/s/Maggy Krell**


**/s/ Jenny C. Huang**
JUSTICE FIRST

Attorneys for Plaintiff, Keiana Aldrich

27